518 S.E.2d 278

**STATE of South Carolina, Respondent,**

v.

**Carlyle TYNDALL, Appellant.**

**No. 3001.**

Court of Appeals of South Carolina.

Submitted May 11, 1999.

Decided May 24, 1999.

Rehearing Denied Sept. 11, 1999.

John A. O'Leary, of O'Leary Associates, of Columbia, for Appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Senior Assistant Attorney General Charles H. Richardson, all of Columbia, for Respondent.

ANDERSON, Judge:

Carlyle Tyndall appeals from his convictions for two counts of assault and battery of a high and aggravated nature (ABHAN) and one count of resisting arrest. We affirm.[1]

### FACTS/PROCEDURAL BACKGROUND

On January 6, 1996, Verna Moore, the Sumter County Coroner, radioed Chief Donald Allen, with the Mayesville Police Department, to report an escalating altercation between Carlyle Tyndall, Jr., and his father at the father's home. Moore, a family friend, had picked Tyndall up at his home in Cherryvale and taken him to his father's home for a visit.

Chief Allen and Sergeant Wylie Tiller, Jr., responded to Moore's call. Moore was outside the house when the officers arrived. She informed Chief Allen that Tyndall had threatened to kill her and his father. Tyndall's father, who was in poor health and required a wheelchair and oxygen, was in the kitchen. He was frightened, upset, and crying. Once inside, the officers, with their straight batons drawn, entered the small den off the kitchen where Tyndall was located.

Chief Allen told Tyndall his father wanted him to leave and that if he did not comply, he would be placed under arrest for

---

1. Because oral argument would not aid the Court in resolving the issues on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.

trespass after notice. Tyndall refused to leave. Chief Allen stated: "[Y]ou're under arrest for trespassing after notice. Turn around, put your hands behind your back." Tyndall reached under the couch cushion, withdrew a hammer, and started swinging it. The officers backed up toward the kitchen and asked Tyndall to put the hammer down.

Tyndall ran at the officers while brandishing the flat side of the hammer and threatening to kill them. Chief Allen yelled "go to guns" and attempted to push Sergeant Tiller into the kitchen. Tyndall struck Tiller on the right side of the head with the hammer. As the hammer bounced off of Tiller, it hit Allen's hand. During this time, Tyndall was saying: "I'm going to kill ya'll. You know, I'm going to kill somebody here today. I'm going to kill ya'll today." Tyndall turned the hammer to the "claw" side and was preparing to strike again when Chief Allen drew his gun and fired at Tyndall's thigh. However, Allen's gun jammed.

Sergeant Tiller heard Chief Allen's gun misfire. Tiller fired his gun into the den about three times, striking Tyndall in the legs. Allen corrected his gun and fired a couple of shots into Tyndall's legs while warning him to stop swinging the hammer. Chief Allen pointed his firearm directly at Tyndall's head and warned him a final time to drop the hammer. Tyndall fell to the floor. Chief Allen kicked the hammer away from Tyndall's hand and the hammer landed close to the den wall. Chief Allen later "signed a warrant charging [Tyndall] with resisting arrest while being arrested for trespass after notice."

Moore had followed the officers into the house and was attending to Tyndall's father in the kitchen. She claimed she did not hear words exchanged between the officers and Tyndall. When she heard gunfire, she pushed Tyndall's father, in his wheelchair, behind the refrigerator and went out the back door. After Tyndall was shot, Moore applied bandages and pressure to his gunshot wounds. Although Moore testified she did not see a hammer on the floor at this time or at any time during the evening's events, she had seen Tyndall threaten his father with a hammer on a prior occasion.

Officer Dana Wingate, the crime scene investigator, observed the hammer lying on the floor. Before the crime scene

photographers arrived, Officer Wingate removed the hammer from the floor, apparently for safety purposes, and placed it in his car. He mistakenly forgot to include the hammer in the crime scene diagram.

Thomas Taylor, a police instructor with experience in crime scene investigation, explained the standard procedure for securing the crime scene would not normally include removing the weapon from the crime scene. According to Taylor, removal of any item would contaminate a crime scene.

Tyndall was charged with two counts of attempted murder, two counts of assault and battery with intent to kill (ABIK), and one count of resisting arrest. He was tried on the resisting arrest charge and the two ABIK charges. Tyndall moved to dismiss all charges because he was never arrested or prosecuted for trespass after notice. The court denied the motion. The judge charged the jury as to ABIK and the lesser included offense of ABHAN, but refused to charge the law of simple assault and battery.

Tyndall was convicted of resisting arrest and two counts of ABHAN. The judge denied Tyndall's motion to set aside the verdict and grant a new trial.

## ISSUES

I. Did the trial court err in failing to dismiss the charge of resisting arrest?

II. Did the trial court err in refusing to charge simple assault and battery?

## LAW/ANALYSIS

### I. Resisting Arrest Charge

Tyndall contends the trial court erred in failing to dismiss the charge of resisting arrest. Specifically, he argues he did not unlawfully resist arrest (1) because "[n]o judicial determination was made as to the probable cause to arrest for Trespass after Notice"; (2) because, as owner and co-occupant of the house, it was legally impossible for him to be arrested for trespass after notice; and (3) because he was never charged or prosecuted for trespass after notice, the underlying offense. We disagree.

Tyndall was convicted of violating S.C.Code Ann. § 16–9–320(B) (Supp.1998), which provides:

It is unlawful for a person to knowingly and wilfully assault, beat, or wound a law enforcement officer engaged in serving, executing, or attempting to serve or execute a legal writ or process or to assault, beat, or wound an officer when the person is resisting an arrest being made by one whom the person knows or reasonably should know is a law enforcement officer, whether under process or not. A person who violates the provisions of this subsection is guilty of a felony and, upon conviction, must be fined not less than one thousand dollars nor more than ten thousand dollars or imprisoned not more than ten years, or both.

### A. Probable Cause to Arrest

■ Tyndall alleges that, because no judicial determination was made as to the officers' probable cause to arrest him for trespass after notice, "the actions taken by the officers were absent probable cause and contrary" to *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), and *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

■ A police officer may, without a warrant, arrest a person who commits a misdemeanor in his presence. *See* S.C.Code Ann. § 17–13–30 (1985); *Summersell v. South Carolina Dep't of Pub. Safety,* 334 S.C. 357, 513 S.E.2d 619 (1999). *See also State v. Mims,* 263 S.C. 45, 208 S.E.2d 288 (1974) (officer has power and authority to arrest without warrant those who have committed violation of criminal laws of this State within view of such officer).

Contrary to Tyndall's arguments, he did commit the crime prohibited by S.C.Code Ann. § 16–11–620 (Supp.1998), commonly known as criminal trespass or trespass after notice. Section 16–11–620 reads in pertinent part:

Any person who, without legal cause or good excuse, enters into the dwelling house, place of business, or on the premises of another person after having been warned not to do so or **any person who, having entered into the dwelling house,** place of business, **or on the premises of anoth-**

er person without having been warned fails and refuses, without good cause or good excuse, to leave immediately upon being ordered or requested to do so by the person in possession or his agent or representative shall, on conviction, be fined not more than two hundred dollars or be imprisoned for not more than thirty days (emphasis added).

Trespass after notice is a misdemeanor. *See* S.C.Code Ann. § 16-1-10(C) (Supp.1998) (all offenses with term of imprisonment of less than one year are misdemeanors).

The record reflects Tyndall resided in Cherryvale at the time of the altercation with his father. Moore picked him up from his home and drove him to his father's residence for a visit. Tyndall's claim that he resided in the same home as his father on the day in question is unsubstantiated. When the police arrived, Tyndall's father told them to ask Tyndall to leave, which the officers did. By refusing to leave upon request, Tyndall committed the crime of trespass after notice. *See State v. Cross*, 323 S.C. 41, 448 S.E.2d 569 (Ct.App.1994). Because Tyndall committed this crime in the presence of the police officers, they had the power and authority to arrest Tyndall without a warrant. There was no requirement for a judicial determination as to probable cause to arrest for trespass after notice.

In a one sentence reference to *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), and *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), Tyndall avers the actions of the officers were in contrariety to these cases. Thereafter, Tyndall makes *no* reference to *Brinegar, Beck,* or *Gates* in his brief. He does not include in his argument any discussion of these decisions or their applicability to his situation. Conclusory arguments constitute an abandonment of the issue on appeal. *See Solomon v. City Realty Co.*, 262 S.C. 198, 203 S.E.2d 435 (1974) (where only passage in brief relating to issue appealed was single conclusory statement which left "unargued the error assigned by [the] exception" and was not even "manifestly correct," issue was held abandoned). Here, Tyndall does not abandon the basic issue. However, his *reliance* upon the cases of *Brinegar, Beck,* and *Gates* is deemed abandoned. *See*

*Cannon v. Cannon,* 321 S.C. 44, 467 S.E.2d 132 (Ct.App.1996) (issue not argued in brief is deemed abandoned on appeal); *Stier, Kent & Canady, Inc. v. Jackson,* 317 S.C. 179, 452 S.E.2d 606 (Ct.App.1994) (where only argument in appellants' brief regarding issue appeared once in footnote and no authority was cited, argument was so conclusory as to be deemed abandonment of issue on appeal). Additionally, although *Brinegar, Beck,* and *Gates* articulate rules in reference to probable cause, the principles encapsulated therein have no applicability to the case *sub judice.*

### B. Owner of Property

■ Tyndall maintains that because he is the title owner of the home in which his father resides he could not be guilty of trespassing on his own property. We disagree.

■ Initially, we note Tyndall has not provided this Court with a copy of a deed proving his ownership of the property in question. Included in the record on appeal is a copy of his motion to set aside the verdict. In that motion, Tyndall alleged the property belongs to him and parenthetically noted a deed was attached to the motion. We have been provided with no copy of any attachment which may have accompanied this motion. An appellant has a duty to provide this Court with a record sufficient for review of the issues on appeal. *State v. Mitchell,* 330 S.C. 189, 498 S.E.2d 642 (1998).

Moreover, regardless of who *owned* the property on the date in question, the home was Tyndall's father's *"dwelling house."* The language of section 16–11–620 does not exclude an owner from the class of persons who may be convicted of trespass after notice. The section provides that *"[a]ny person"* who violates the statute may be convicted. A record owner's right to be on the property may be circumscribed if another person peaceably possesses the property. For example, the South Carolina Residential Landlord and Tenant Act restricts the access of a landlord, even one who is the owner, to property in the possession of a tenant. *See* S.C.Code Ann. § 27–40–530 (1991) (restricting a landlord's access to property in possession of a tenant); S.C.Code Ann. § 27–40–210(6) (1991) (" 'landlord' means the owner ..."). Because Tyndall refused to leave his father's home after being asked to do so,

the police officers acted within the scope of their power when they arrested him without a warrant for trespass after notice.

### C. Failure to Prosecute Tyndall
### for Trespass After Notice

██ Tyndall claims his conviction for resisting arrest cannot stand because he was never charged or prosecuted for the underlying offense for which he was being arrested. This contention is meritless.

██ Section 16–9–320, the resisting arrest statute, does not mandate the underlying arrest be prosecuted as a prerequisite for the indictment, prosecution, or conviction of resisting arrest. Furthermore, as our Supreme Court explained in *State v. Thrift*, 312 S.C. 282, 440 S.E.2d 341 (1994):

Both the South Carolina Constitution and South Carolina case law place the unfettered discretion to prosecute solely in the prosecutor's hands. . . . Prosecutors may pursue a case to trial, or they may plea bargain it down to a lesser offense, or they can simply decide not to prosecute the offense in its entirety. The Judicial Branch is not empowered to infringe on the exercise of this prosecutorial discretion.

*Thrift*, 312 S.C. at 291–92, 440 S.E.2d at 346–47 (footnotes omitted). *See also* S.C. Const. art. V, § 24; *State ex rel. McLeod v. Snipes*, 266 S.C. 415, 223 S.E.2d 853 (1976); *State v. Becka*, 333 S.C. 676, 511 S.E.2d 396 (Ct.App.1999). The fact that Tyndall was never indicted or tried for trespass after notice cannot serve as a bar to his prosecution for resisting the arrest.

██ In addition, Tyndall contends S.C.Code Ann. § 17–13–50 (Supp.1998) requires the State to file "the necessary documents for prosecution of the underlying offense of Trespass after Notice." There is no such requirement in section 17–13–50. This section states:

(A) A person arrested by virtue of process or taken into custody by an officer in this State has a right to know from the officer who arrests or claims to detain him the true ground on which the arrest is made. It is unlawful for an officer to:

(1) refuse to answer a question relative to the reason for the arrest;

(2) answer the question untruly;

(3) assign to the person arrested an untrue reason for the arrest; or

(4) neglect on request to exhibit to the person arrested or any other person acting in his behalf the precept by virtue of which the arrest is made.

(B) An officer who violates the provisions of this section is guilty of a felony and, upon conviction, must be fined in the discretion of the court or imprisoned not more than ten years, or both.

The gravamen of this statute relates to the right to be informed of the ground of arrest. Under this code provision, an officer has a duty to respond to an arrestee by answering questions relating to the arrest. There is no mention of any filing requirement under this law.

## D. Double Jeopardy Analysis

Although not argued, we note for the edification of the Bench and Bar that our Supreme Court has concluded a person may be convicted of ABHAN and resisting arrest under a factual and legal scenario with similitude. Because of the reoccurring prosecutions for ABHAN and resisting arrest in General Sessions court, *Stevenson v. State*, 335 S.C. 193, 516 S.E.2d 434 (1999), provides procedural guidance. *Stevenson* explicates:

Petitioner claims under *State v. Hollman*, 232 S.C. 489, 102 S.E.2d 873 (1958) his convictions for ABHAN and resisting arrest violate the prohibition against multiple punishments under the Double Jeopardy Clause. The *Hollman* Court held convictions for resisting arrest and ABHAN constituted a violation of the Double Jeopardy Clause. The Court stated the assault on the officer was "the essence of, and inseparable from, the resistance of arrest." In *Hollman*, the Court went beyond the required elements of each offense and considered the actual proof offered at trial in reaching its decision. Therefore, the *Hollman* Court did not strictly apply the *Blockburger* "same elements" test.

. . . .

However, because the *Hollman* court applied the incorrect analysis, we expressly overrule its holding. Instead, under the *Blockburger* "same elements" test, convictions for both ABHAN and resisting arrest do not constitute a double jeopardy violation.

ABHAN requires proof of an unlawful act of violent injury to the person of another, accompanied by circumstances of aggravation. *State v. Easler, supra* [327 S.C. 121, 489 S.E.2d 617 (1997)]; *State v. Jones,* 133 S.C. 167, 130 S.E. 747 (1925), *overruled in part on other grounds, State v. Foust,* 325 S.C. 12, 479 S.E.2d 50 (1996). The offense of resisting arrest requires proof that a person knowingly and wilfully assaulted, beat or wounded a law enforcement officer during an arrest when the person resisting knew or should have known the officer was a law enforcement officer. S.C.Code Ann. § 16–9–320(B) (Supp. 1998).

ABHAN requires proof of a circumstance of aggravation which is not required for resisting arrest. Resisting arrest requires proof that the person assaulted is a law enforcement officer which is not an element of ABHAN. Accordingly, because each requires proof of an element the other does not, neither is a lesser included offense of the other and the double jeopardy clause is not violated by convicting a defendant of both offenses.

*Stevenson,* 335 S.C. at 199–200, 516 S.E.2d at 437–38 (footnotes omitted).

## II. Simple Assault and Battery/Lesser Included Offense

 Tyndall was convicted of two counts of assault and battery of a high and aggravated nature. He complains the trial court erred in failing to charge the jury as to the lesser included offense of simple assault and battery. As a basis for this argument, he claims the jury could have concluded from the trial testimony that no hammer was used.[2] We find no error.

 Tyndall was prosecuted on two counts of ABIK. The judge charged the jury as to (1) ABIK; and (2) ABHAN.

---

2. The hammer was in evidence as State's Exhibit # 7.

Assault and battery with intent to kill is an unlawful act of violent nature to the person of another with malice afore-thought, either express or implied. *State v. Foust*, 325 S.C. 12, 479 S.E.2d 50 (1996). Assault and battery of a high and aggravated nature is an unlawful act of violent injury to another accompanied by circumstances of aggravation. *State v. Murphy*, 322 S.C. 321, 471 S.E.2d 739 (Ct.App.1996). Examples of circumstances of aggravation include the use of a deadly weapon, the infliction of serious bodily injury, the intent to commit a felony, great disparity between the ages and physical conditions of the parties involved, and the difference in the sexes. *Id.* Other circumstances include indecent liberties or familiarities with a female, the purposeful infliction of shame and disgrace, and **resistance to lawful authority.** *Id.* "In contrast, 'simple assault and battery' is an unlawful act of violent injury to another, unaccompanied by any circum-stances of aggravation." *State v. Sprouse*, 325 S.C. 275, 285–86, 478 S.E.2d 871, 877 (Ct.App.1996). Simple assault and battery is a lesser included offense of ABHAN. *See State v. Rucker*, 319 S.C. 95, 459 S.E.2d 858 (Ct.App.1995).

Upon indictment for a greater offense, a trial court has subject matter jurisdiction to convict a defendant for any lesser included offense. *See Browning v. State*, 320 S.C. 366, 465 S.E.2d 358 (1995). A lesser included offense instruc-tion is required only when the evidence warrants such an instruction, and it is not error to refuse to charge the lesser included offense unless there is evidence tending to show the defendant was guilty only of the lesser offense. *Murphy, supra. See also Sprouse, supra* (trial judge is required to charge jury on lesser included offense if there is evidence from which it could be inferred defendant committed lesser, rather than greater offense). The trial court should refuse to charge a lesser included offense where there is no evidence the defendant committed the lesser rather than the greater offense. *State v. Tucker*, 324 S.C. 155, 478 S.E.2d 260 (1996); *State v. Smith*, 315 S.C. 547, 446 S.E.2d 411 (1994). Due process requires that a lesser included offense be charged when the evidence warrants it but only if the evidence would permit a jury rationally to find the defendant guilty of the lesser offense. *State v. Small*, 307 S.C. 92, 413 S.E.2d 870 (Ct.App.1992). In order to justify a charge of a lesser includ-

ed offense, the evidence must be capable of sustaining either the greater or the lesser offense, depending on the jury's view of the facts. *Id.*

Tyndall's reliance upon *State v. Wiggins,* 262 S.C. 517, 205 S.E.2d 833 (1974), and *State v. Moore,* 245 S.C. 416, 140 S.E.2d 779 (1965), is misplaced. In *Wiggins* and *Moore,* the testimony at trial posited an issue for the jury to determine whether the assault and battery was simple or aggravated.

The possibility that the jury might have disbelieved the State's evidence as to the circumstances of aggravation and on the remaining evidence found the defendant guilty of simple assault and battery does not entitle the defendant to have the lesser offense submitted to the jury. *State v. Foxworth,* 269 S.C. 496, 238 S.E.2d 172 (1977). *See also State v. Funchess,* 267 S.C. 427, 229 S.E.2d 331 (1976) (presence of evidence to sustain crime of a lesser degree determines whether it should be submitted to the jury and mere contention that jury might accept State's evidence in part and might reject it in part will not suffice). No instruction should be given by the trial judge, at the request of the defendant, which tenders an issue not presented or supported by the evidence. *State v. Weaver,* 265 S.C. 130, 217 S.E.2d 31 (1975).

In view of the evidence presented in this case, the trial judge did not err in denying Tyndall's request to charge the lesser included offense of simple assault and battery. The evidence shows Tyndall resisted the officers' "lawful authority," an aggravating circumstance of ABHAN. There is no evidence tending to show Tyndall was guilty only of simple assault and battery. The only reasonable inference to be drawn from the totality of the evidence is that Tyndall committed the offense under circumstances of aggravation.

## CONCLUSION

We hold the trial court did not err in failing to dismiss Tyndall's resisting arrest charge. Tyndall's claim that the underlying offense of trespass after notice was not present is rejected. The trifurcated attack posited by Tyndall on the offense of trespass after notice consisting of Tyndall's allegations (1) no judicial determination was made as to the probable cause to arrest for trespass after notice; (2) he was owner and

co-occupant of the house; and (3) he was never charged or prosecuted for trespass after notice has been answered and vetoed with specificity in this opinion. Additionally, we conclude the judge did not err in refusing to charge the law of simple assault and battery since it was not warranted by the evidence. Accordingly, Tyndall's convictions are

**AFFIRMED.**

CURETON, J., concurs.

STILWELL, J., concurs in result only.