567 S.E.2d 912

**The STATE, Respondent,**

v.

**Isaac GOODWIN (Goodman), Jr., Appellant.**

**No. 3536.**

Court of Appeals of South Carolina.

Submitted May 6, 2002.

Decided July 29, 2002.

106

Senior Assistant Appellate Defender Wanda H. Haile, of S.C. Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Attorney General Charles H. Richardson and Senior Assistant Attorney General Norman Mark Rapoport; and Solicitor Warren B. Giese, all of Columbia, for respondent.

HUFF, Judge:

Appellant, Isaac Goodman,[1] was indicted for resisting arrest, trafficking in cocaine, possession with intent to distribute (PWID) crack cocaine, PWID marijuana, and PWID crack within the proximity of a school or park. Following a bench trial, the court found him guilty as charged and sentenced Goodman to concurrent sentences of twenty-five years on the trafficking charge, five years for PWID marijuana, ten years for PWID crack, five years for PWID crack within a half mile of a school, and one year for resisting arrest. He now appeals, challenging the trial judge's failure to suppress the drug evidence. We affirm.[2]

---

1. The defendant's last name was listed as "Goodwin" on the indictments, but the court, with defense counsel's consent, amended the indictments at trial to state the last name as "Goodman" based on the representation of counsel and the defendant that "Goodwin" was a misnomer.

2. We decide this case without oral argument pursuant to Rule 215, SCACR.

## FACTUAL/PROCEDURAL BACKGROUND

On February 17, 1999, shortly after 2:00 a.m., Deputies Slicer and Turner from the Richland County Sheriff's Department, along with Deputy Swain following in another car, were patrolling an area in Columbia near Eau Claire High School when they observed a moped being driven in the opposite direction. Deputy Slicer initiated a traffic stop because the moped, designed for one person, was carrying two people, in violation of S.C.Code Ann. § 56–5–3710.[3]

Goodman was the driver of the moped, and his girlfriend was the passenger. When the deputy requested a driver's license, Goodman stated that his license was under suspension and that he understood he did not need a moped license. After running a license check, Deputy Slicer determined, because Goodman's license was suspended for more than six months, he was required to have a moped license pursuant to S.C.Code Ann. § 56–1–1720.[4]

Deputy Slicer testified it was a very cold night and Goodman was wearing bulky clothing, but he could clearly see something protruding from Goodman's right front jacket pocket. Based on prior information he had received about Goodman, the deputy was concerned the protrusion might be a weapon. He asked Goodman for his consent to search his person and Goodman agreed. The deputy felt something large and hard outside of the pocket, and thought it could be a weapon. When he pulled it out, he found a very large roll of cash the size of a duct tape roll, secured with rubber bands. The moment he showed Goodman what he found, Goodman grabbed the money and started striking the deputy with the

---

3. This section provides, "No person may ride upon a moped other than upon or astride a permanent and regular seat attached to the moped. No moped may be used to carry more persons at one time than the number for which it is designed and equipped." S.C.Code Ann. § 56–5–3710 (1991).

4. South Carolina Code Ann. § 56–1–1720 (1991) states, in pertinent part, "After December 31, 1986, to operate a moped on the public highways and streets of this State, a person must possess a valid driver's license ... or a valid moped operator's license ..., except that a person whose driver's license has been suspended for a period of six months or less is not required to obtain a moped operator's license or possess a valid driver's license during the period of suspension."

back of his arms, pushing backward and trying to get away. At the time he began hitting the deputy, Goodman revoked his consent to search. As soon as Goodman began assaulting him, Deputy Slicer told him he was under arrest.

Two other officers who were on the scene assisted Deputy Slicer with Goodman. As they struggled, one of Goodman's gloves came off and a package of crack cocaine fell out of the glove. One of the deputies sprayed Goodman's eyes with a chemical spray, and they were then able to subdue him. Based on the discovery of the drugs from Goodman's glove, Deputy Slicer seized the moped and conducted an inventory search. He found a loaded handgun, a large bag of marijuana, three bags of cocaine, and twenty-one rounds of ammunition under the seat of the moped.[5]

At trial, Goodman moved to suppress all the drug evidence arguing, even if probable cause existed to make the stop, the two traffic violations with which he was charged were not "arrestable offenses" that carried jail time. He contended Deputy Slicer testified he was arrested for the traffic violations and resisting arrest, but the deputy did not state he was arrested for assault. He asserted no valid, underlying arrest was made to support the resisting arrest charge. Therefore, his arrest was illegal and the subsequent discovery of drugs was fruit of the poisonous tree.

The trial judge denied Goodman's motion to suppress ruling (1) there was probable cause to stop Goodman, (2) Goodman consented to a voluntary search, (3) when the deputy found the money and pulled it out of the pocket, Goodman assaulted the deputy, (4) the deputy told Goodman he was under arrest, and (5) Goodman was ultimately charged with resisting arrest. He determined that a chain of events occurred which ultimately led to an event which would permit Goodman to be arrested, and only thereafter were the drugs discovered.

## LAW/ANALYSIS

On appeal, Goodman argues the trial judge erred in denying his motion to suppress the drug evidence because his arrest

---

**5.** During the suppression hearing, Goodman testified that he never gave Deputy Slicer consent to search. Rather, he claimed when he asked the deputy why he wanted to search him, Deputy Slicer told him to get up against the car, and then told Goodman that he was under arrest.

was unlawful. He contends the deputy did not state he was under arrest for assaulting him, and to secure a conviction for resisting arrest, there must first be a lawful arrest.

In criminal cases, this court sits to review errors of law only, and we are bound by the trial judge's factual findings unless they are clearly erroneous. *State v. Wilson,* 345 S.C. 1, 545 S.E.2d 827 (2001). This same standard of review applies to preliminary factual findings in determining the admissibility of certain evidence in criminal cases, and our review is limited to determining whether the trial judge abused his discretion. *Id.* The appellate court may not re-evaluate the facts based on its own view of the preponderance of the evidence, but must determine whether the trial judge's ruling is supported by any evidence. *Id.*

When determining the constitutional validity of an arrest, a court must consider 'whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [appellant] had committed ... an offense.'

*State v. Robinson,* 335 S.C. 620, 634, 518 S.E.2d 269, 276 (Ct.App.1999) (alterations in original) (quoting *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)). "Whether probable cause exists depends upon the totality of the circumstances surrounding the information at the officers [sic] disposal." *Id.*

During the suppression hearing, Deputy Slicer testified on cross-examination that Goodman was placed under arrest for "[r]esisting arrest, assault[ing] me, and the moped violations." He stated he did not formally charge Goodman with assault because, in lieu of all the other charges, he did not think it was that important.

The fact that Goodman was not subsequently charged with the assault is immaterial. Goodman has failed to show, or even argue, that the resisting arrest charge could not stand because a charge for assault would have been unlawful under the circumstances. At the moment the arrest was made, Deputy Slicer clearly had probable cause to make it, based on the assault. Goodman was arrested for, and ulti-

mately convicted of, resisting arrest, and therefore was under lawful arrest at the time drugs were initially found. Just as an underlying arrest need not be prosecuted in order to successfully prosecute for resisting arrest, neither should the absence of a charge on the underlying arrest bar evidence seized subsequent to a proper resisting arrest charge. *See State v. Tyndall,* 336 S.C. 8, 518 S.E.2d 278 (Ct.App.1999) (the resisting arrest statute does not mandate the underlying arrest be prosecuted as a prerequisite for the indictment, prosecution, or conviction of resisting arrest). Further, Goodman cites no authority which requires an officer to specifically advise a detainee of the precise nature of his crime at the moment of arrest in order for the arrest, and/or a subsequent charge of resisting arrest, to be lawful. There is evidence to support the trial judge's ruling on the admissibility of the drug evidence. Accordingly, Goodman's convictions are

**AFFIRMED.**

HEARN, C.J., and HOWARD, J., concur.