654 S.E.2d 846

Tommy HUTTO, Petitioner

v.

STATE of South Carolina, Respondent.

No. 4308.

Court of Appeals of South Carolina.

Heard Sept. 12, 2007.

Decided Oct. 26, 2007.

Rehearing Denied Jan. 18, 2008.

Assistant Appellate Defender Wanda H. Carter, of Columbia, for Petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Lance S. Boozer, Assistant Attorney General Paula Magargle, and John Benjamin Aplin, all of Columbia, for Respondent.

CURETON, A.J.:

Tommy Hutto was convicted of first-degree burglary, first-degree criminal sexual conduct, and armed robbery. The trial court sentenced Hutto to 30 years each for the first-degree criminal sexual conduct and armed robbery charges and life imprisonment for the burglary charge. The post-conviction relief (PCR) court denied Hutto's request for relief and we granted certiorari. We affirm.

## FACTS

In the early morning hours of July 16, 1998, Victim, a 90–year–old woman, awoke to the sound of someone breaking the glass in her door. Victim saw a man enter her home. The intruder accidentally cut himself while attempting to gain entry into Victim's home. Victim grabbed a loaded rifle in order to confront the intruder, but the intruder wrestled it away from her. Victim's assailant robbed, sexually assaulted her, and burglarized her home before leaving.

On August 1, 1998, Hutto's probation agent, accompanied by probation agent James Harris, visited Hutto on a routine visit to verify Hutto's address. During the home visit, Harris noticed lacerations on Hutto's arms and hands.

Hubert Nimau, the police investigator handling Victim's case, issued a "be on the lookout" notice requesting information regarding suspects fitting the following profile: Caucasian male, approximately 24 to 25 years old, 5'8" tall, weighing 130 pounds, short dark hair, and has fresh cuts or lacerations to his arms and hands. Believing Hutto could fit the description, Harris disclosed his observations of Hutto's lacerations to Nimau. Nimau, utilizing information from Harris as well as other information independently received in response to a

crime watchers news article, prepared a lineup which included Hutto's picture. Victim identified Hutto as her assailant by selecting his picture out of the lineup.

Based on this identification, Nimau obtained a search warrant for Hutto's blood. Nimau executed the search warrant and a nurse obtained Hutto's blood for testing pursuant to the warrant. A forensic DNA analyst at the South Carolina Law Enforcement Division, compared Hutto's DNA with DNA samples taken from the crime scene at Victim's house. The DNA samples taken from the crime scene, including cuttings taken from Victim's pajama bottoms, matched Hutto's DNA.[1]

Hutto was indicted for armed robbery, criminal sexual conduct in the first degree, and burglary in the first degree. On November 3, 1999, a jury found Hutto guilty of all three charges. The trial judge sentenced Hutto to thirty years imprisonment for the armed robbery charge, thirty years imprisonment for criminal sexual conduct, and life imprisonment for the burglary charge, with the sentences set to run concurrently. Hutto appealed his convictions to our court and we affirmed in an unpublished opinion. *See State v. Hutto*, Op. No.2002–UP–395 (S.C. Ct.App. filed June 4, 2002).

Hutto applied for PCR and, after a hearing, the PCR judge denied Hutto's request for relief. Hutto appeals.

## STANDARD OF REVIEW

"To establish a claim of ineffective assistance of counsel, a PCR applicant must prove: (1) that counsel failed to render reasonably effective assistance under prevailing professional norms; and (2) that the deficient performance prejudiced the applicant's case." *Custodio v. State*, 373 S.C. 4, 9, 644 S.E.2d 36, 38 (2007). "Judicial scrutiny of counsel's performance is highly deferential and the court must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance....'" *Simpson v. Moore*,

---

1. Dr. Taylor testified "that the probability of selecting an unrelated person from the general population at random having a DNA profile matching the items that I analyzed, the swabs from the house and the cutting from the pajama bottom, is approximately 1 in 12 trillion blacks and 1 in 500 billion Caucasians."

367 S.C. 587, 598, 627 S.E.2d 701, 707 (2006) (quoting *Butler v. State*, 286 S.C. 441, 445, 334 S.E.2d 813, 816 (1985)).

"This Court will sustain the PCR judge's factual findings and conclusions regarding ineffective assistance of counsel if there is any probative evidence to support those findings." *Jackson v. State*, 329 S.C. 345, 348, 495 S.E.2d 768, 769 (1998). "However, if there is no probative evidence to support the PCR judge's findings, the findings will not be upheld." *Id.* In addition, our court will reverse the PCR judge's decision if it is controlled by an error of law. *Suber v. State*, 371 S.C. 554, 558–59, 640 S.E.2d 884, 886 (2007).

## DISCUSSION

We granted certiorari to address whether Hutto's trial counsel was ineffective for not moving to suppress the evidence presented against Hutto on the basis of an improper disclosure by a probation agent.

Section 24–21–290 of the South Carolina Code provides as follows:

**Information received by probation agents privileged.**

All information and data obtained in the discharge of his official duty by a probation agent is privileged information, is not receivable as evidence in a court, and may not be disclosed directly or indirectly to anyone other than the judge or others entitled under this chapter to receive reports unless ordered by the court or the director.

S.C.Code Ann. § 24–21–290 (2007).

On appeal, Hutto argues Harris disclosed privileged observations made in the discharge of his official duties as a probation agent without having obtained proper authorization pursuant to section 24–21–290 to disclose that information. In addition, Hutto complains that Harris improperly testified about his observations in violation of the statute. Furthermore, Hutto reasons that the evidence gained as a result of the unauthorized disclosure, specifically Victim's identification of Hutto from the line-up and the DNA evidence obtained as a result of the identification, should be excluded as fruits of the poisonous tree. Based on all of the above, Hutto contends his

trial counsel was ineffective for failing to object to the admission of this evidence pursuant to section 24–21–290.

The main purpose of the exclusionary rule is the deterrence of police misconduct. *State v. Harvin*, 345 S.C. 190, 194, 547 S.E.2d 497, 500 (2001). "In the context of the application of the exclusionary rule, our supreme court held the 'exclusion of evidence should be limited to violations of constitutional rights and not to statutory violations, at least where the appellant cannot demonstrate prejudice at trial resulting from the failure to follow statutory procedures.' " *State v. Sheldon*, 344 S.C. 340, 343, 543 S.E.2d 585, 586 (Ct.App.2001) (quoting *State v. Chandler*, 267 S.C. 138, 226 S.E.2d 553 (1976)).

■ "The 'fruit of the poisonous tree' doctrine provides that evidence must be excluded if it would not have come to light but for the illegal actions of the police, and the evidence has been obtained by the exploitation of that illegality." *State v. Copeland*, 321 S.C. 318, 323, 468 S.E.2d 620, 624 (1996). The challenged evidence is admissible, however, if it was obtained from a lawful source independent of the illegal conduct. *Id.*

Addressing Hutto's argument concerning the probation officer's disclosure, the PCR judge found Hutto's counsel was not ineffective for failing to raise the issue to the trial court. The court held that, even if counsel was deficient, Hutto could not demonstrate that his counsel's failure prejudiced the outcome of the case. The court reasoned that "24–21–290 [does not] require the exclusion of any subsequent evidence obtained as a result of an improper disclosure." The PCR judge explained in his order that "even if trial counsel did move to exclude evidence pursuant to statute 24–21–290, the trial court would only have been obliged to exclude any testimony about the cuts on the Applicant's hands."

■■ The interpretation of a statute is a question of law for the court. *Catawba Indian Tribe of South Carolina v. State*, 372 S.C. 519, 524, 642 S.E.2d 751, 753 (2007). We hold that Harris's observations of Hutto's scratches do not constitute the kind of information or data considered privileged under section 24–21–290. The statute's title indicates that for information or data to be privileged under section 24–21–290, it must be "received" by a probation agent. Black's Law Dictionary defines the word "receive" as to "take into posses-

sion and control; accept custody of." 1433 (4th ed. 1968). This definition infers a transfer or transmission. We find that Hutto has failed to show how Harris "received" information or data by merely observing the wounds on Hutto's hands and arms. We believe this interpretation is in keeping with the legislative intent and would not undermine the statute's purpose. *See* 98 C.J.S. *Witnesses* § 366, at 339–40 (2002) ("[I]n some jurisdictions, a statutory privilege [attaches] to information and data obtained in the discharge of official duties by probation and parole agents, the purpose of which is to permit interviewees to express themselves fully without fear of disclosure or reprisal.").

Moreover, Nimau explained during his *in camera* testimony that he included Hutto's picture in the lineup after receiving information from two sources: Harris and a tip made in response to a crime watchers' newspaper article. Regardless of whether or not Harris's observations constitute "information and data" under section 24–21–290, the record indicates Nimau had sufficient justification to include Hutto's picture in the lineup independently of Harris's information. As such, Harris's disclosure to Nimau was not the only reason Hutto appeared in the lineup, and therefore we find no reason to exclude Victim's identification of Hutto or the DNA evidence obtained through a search warrant based on that identification.[2] To exclude the evidence would place the police in a worse position than they otherwise would have been. *See Nix v. Williams*, 467 U.S. 431, 443, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) ("The independent source doctrine teaches us that the interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a worse, position that they would have been in if no

---

2. We are authorized to consider any sustaining ground found within the record. *See* Rule 220(c), SCACR ("The appellate court may affirm any ruling, order, or judgment upon any ground(s) appearing in the Record on Appeal."). *See also I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 420, 526 S.E.2d 716, 723 (2000) ("The appellate court may review respondent's additional reasons and, if convinced it is proper and fair to do so, rely on them or any other reason appearing in the record to affirm the lower court's judgment.").

police error or misconduct had occurred.").[3]

AFFIRMED.

WILLIAMS, J., and CURETON and GOOLSBY, AJJ., concur.

---

**3.** We note the alleged violations of section 24–21–290 stemmed from the actions of a probation agent rather than a police officer. "A probation agent has, in the execution of his duties, the ... powers of arrest, and, to the extent necessary, the same right to execute process given by law to sheriffs. A probation agent has the power and authority to enforce the criminal laws of the State." S.C.Code Ann. § 24–21–280(b) (2007). However, "[t]he United States Supreme Court has yet to consider whether the exclusionary rule applies if a constitutional violation stems from erroneous information provided to police by the officers or employees of a probation department." *People v. Ferguson,* 109 Cal.App.4th 367, 373, 134 Cal.Rptr.2d 705 (Cal.Ct.App.2003). This appears to be a novel issue for South Carolina as well. Having determined that section 24–21–290 does not apply in this case, we need not address this issue.