564 S.E.2d 103

The STATE, Petitioner,

v.

James Anthony PRIMUS, Respondent.

No. 25471.

Supreme Court of South Carolina.

Heard April 4, 2002.
Decided May 20, 2002.

578

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Robert E. Bogan, Assistant Attorney General Melody

J. Brown, all of Columbia; and Solicitor Walter M. Bailey, of Summerville, for petitioner.

Chief Attorney Daniel T. Stacey, of South Carolina Office of Appellate Defense; and Katherine Carruth Link, both of Columbia, for respondent.

Justice BURNETT.

Respondent James Anthony Primus (Primus) was indicted on charges of first degree criminal sexual conduct (CSC) and kidnapping. He was convicted of kidnapping and assault and battery of a high and aggravated nature (ABHAN) and sentenced to consecutive terms of thirty years and ten years, respectively. The Court of Appeals reversed. *State v. Primus*, 341 S.C. 592, 535 S.E.2d 152 (Ct.App.2000). The Court granted a writ of certiorari to review the Court of Appeals' decision. We affirm in part and reverse in part.

## ISSUES

I. Did the trial court have subject matter jurisdiction to convict Primus of ABHAN under an indictment for first degree CSC? [1]

II. Did the Court of Appeals err by concluding the assistant solicitor's comment during closing argument about Primus' failure to call his uncle as a witness was prejudicial error?

## DISCUSSION

### I.

Did the trial court have subject matter jurisdiction to convict Primus of ABHAN under an indictment for first degree CSC?

The circuit court does not have subject matter jurisdiction to convict a defendant of an offense unless there is an indictment which sufficiently states the offense, the defendant waives presentment, or the offense is a lesser included offense of the crime charged in the indictment. *State v. Owens*, 346 S.C. 637, 552 S.E.2d 745 (2001). The test for determining

---

1. In its order granting certiorari, the Court ordered the parties to brief this issue.

when an offense is a lesser included offense of another is whether the greater of the two offenses includes all the elements of the lesser offense. *State v. McFadden*, 342 S.C. 629, 539 S.E.2d 387 (2000). If the lesser offense includes an element which is not included in the greater offense, then the lesser offense is not included in the greater offense. *Hope v. State*, 328 S.C. 78, 492 S.E.2d 76 (1997). While the Court recognizes the existence of a few anomalies, it generally adheres to use of the traditional elements test. *State v. Elliott*, 346 S.C. 603, 552 S.E.2d 727 (2001).

Under South Carolina Code Ann. § 16–3–652(1)(a)(b) (Supp. 2001), first degree CSC requires a(1) a sexual battery and (2) aggravated force to accomplish the sexual battery [2] *or* forcible confinement, kidnapping, robbery, extortion, burglary, house-breaking, or any other similar offense or act.[3] A sexual battery is "statutorily defined to include only certain specific acts, which can be loosely described as involving penetration of some sort." *State v. Elliott, supra* 346 S.C. at 606, 552 S.E.2d at 729; S.C.Code Ann. § 16–3–651(h) (1985).

■■■■ ABHAN is an unlawful act of violent injury accompanied by circumstances of aggravation. *State v. Fennell*, 340 S.C. 266, 531 S.E.2d 512 (2000). "Circumstances of aggravation" is an element of ABHAN. *Knox v. State*, 340 S.C. 81, 530 S.E.2d 887 (2000). Circumstances of aggravation include the use of a deadly weapon, the intent to commit a felony, infliction of serious bodily injury, great disparity in the ages or physical conditions of the parties, a difference in gender, the purposeful infliction of shame and disgrace, taking indecent

---

2. "Aggravated force" is defined as the use of "physical force or physical violence of a high and aggravated nature to overcome the victim." S.C.Code Ann. § 16–3–651(c) (1985). Aggravated force also includes the threat of the use of a deadly weapon. *Id.*

3. In 1998, the General Assembly added a third aggravator to first degree CSC. This aggravator provides that the actor engage in a sexual battery while causing the victim to become mentally incapacitated or physically helpless through use of a controlled or intoxicating substance. 1998 S.C. Acts 372, § 4. This provision took effect after the date of the crimes in this case and, therefore, is inapplicable. *See* S.C.Code Ann. § 16–3–652(1)(c).

liberties or familiarities with a female, and resistance to lawful authority. *State v. Fennell, supra.*

■ "Circumstances of aggravation" is an element of ABHAN not included in first degree CSC.[4] *See Knox v. State, supra* ("circumstances of aggravation" is an element of ABHAN not included in second degree lynching, therefore, ABHAN is not a lesser included offense). Furthermore, even though a circumstance of aggravation may constitute an element in first degree CSC under the facts of a particular case (i.e., use of a deadly weapon), because all of the circumstances of aggravation are not elements of first degree CSC, ABHAN is not a lesser included offense. *See id.* (even though second degree lynching includes two circumstances of aggravation that may establish ABHAN, ABHAN is not lesser included offense because there are other circumstances of aggravation that are not included in second degree lynching); *State v. Easler,* 327 S.C. 121, 489 S.E.2d 617 (1997) (because each circumstance of aggravation for ABHAN is not always a necessary element of felony DUI, ABHAN is not a lesser included offense of felony driving under the influence). Accordingly, employing the traditional elements test, ABHAN is not a lesser included offense of first degree CSC.

Nevertheless, the Court most recently determined that because it had consistently held ABHAN is a lesser included offense of assault with intent to commit CSC, it would continue this ruling even though the two offenses failed the traditional elements test. *State v. Elliott, supra.* Similarly, the Court has repeatedly held ABHAN is a lesser included offense of first degree CSC. *State v. Frazier,* 302 S.C. 500, 397 S.E.2d 93 (1990); *State v. Pressley,* 292 S.C. 9, 354 S.E.2d 777 (1987); *State v. Mathis,* 287 S.C. 589, 340 S.E.2d 538 (1986); *State v. Drafts,* 288 S.C. 30, 340 S.E.2d 784 (1986); *State v. Lambright,* 279 S.C. 535, 309 S.E.2d 7 (1983). In order to have a uniform approach to CSC and ABHAN offenses, we likewise hold ABHAN is a lesser included offense of first degree CSC.

---

4. Many of the circumstances of aggravation for ABHAN have nothing to do with the degree of force necessary to establish the element of "aggravated force" in first degree CSC. *See* Footnote 2. ABHAN may occur even though no real force is employed against the victim. *State v. Green,* 327 S.C. 581, 491 S.E.2d 263 (Ct.App.1997).

## *II.*

Did the Court of Appeals err by concluding the assistant solicitor's comment during closing argument about Primus' failure to call his uncle as a witness was prejudicial error?

At trial, the State presented evidence that Primus forced the victim into an abandoned home and raped her. Through the testimony of a police detective, the State introduced Primus' statement to the police; Primus cross-examined the detective. According to the detective, Primus stated he had breakfast at Shoney's and then visited his uncle, Joe Hodges, at the time the assault occurred. Primus rested his case without testifying or offering any witnesses in his defense.

During closing argument the following transpired:

Assistant Solicitor: And the crucial period when Detective Bills told you he was most interested in was this Shoney's and Uncle Joe Hodges' house. Of course, you can't hold the fact that Mr. Primus didn't present any evidence against him, *but don't you think that would have made his alibi a lot stronger if Joe Hodges, his own uncle, had come to court and said, oh, he couldn't have been on Gum Branch Road raping this woman because he was at my house in Corey Woods?*

Defense Counsel: I have an objection, your Honor. We don't have to bring those people to court, Judge.

The Court: I'll be telling you later on, I give each attorney a lot of leeway in making their summation to you and I'll be telling you the defendant doesn't have to do anything, doesn't have to prove anything, but I'll be explaining more to you later. Go ahead, Solicitor.

(Emphasis added).

In his final jury instructions, the trial judge charged the jury Primus had the constitutional right not to testify or offer evidence. In addition, he instructed the jury the State had the burden to prove Primus' guilt beyond a reasonable doubt.

The Court of Appeals reversed Primus' convictions. It concluded that by referring to Primus' failure to call his uncle as a witness, the assistant solicitor improperly commented on Primus' right to rely on his constitutional presumption of innocence and on the State's burden to establish his guilt

beyond a reasonable doubt. *State v. Primus, supra.* The Court of Appeals further found the above-referenced jury charge did not cure the assistant solicitor's error. *Id.* Finally, the Court of Appeals concluded the comment was not harmless in light of the lack of overwhelming evidence against Primus. *Id.*

## A.

Did the Court of Appeals err by holding that, because Primus did not present evidence in his defense, the assistant solicitor improperly commented in closing argument upon his failure to call his uncle to corroborate his alibi defense?

■ The State contends the Court of Appeals erred by holding that, because Primus did not present evidence in his defense, the assistant solicitor improperly commented in closing argument upon his failure to call his uncle to corroborate his alibi defense. The State claims Primus "chose to actively pursue an alibi defense" by giving a statement to police detailing an alibi, cross-examining the witnesses about his alibi, requesting an alibi charge, and arguing alibi in his closing argument and, therefore, the assistant solicitor was not prohibited from commenting on Primus' failure to call his uncle in support of his alibi. We disagree.

■ The State did not raise this issue in its brief to the Court of Appeals. Instead, it argued the comment was cured by the trial judge's charge and was, at most, harmless error in light of the evidence against Primus. The State offered its present argument for the first time in its petition for rehearing. Because the State failed to raise its current argument in its brief to the Court of Appeals, the issue is not properly preserved for this Court's consideration on writ of certiorari. Rule 226(d)(2), SCACR (only questions raised in the Court of Appeals and in the petition for rehearing shall be included in the petition for a writ of certiorari); *see Video Gaming Consultants, Inc. v. South Carolina Dep't of Revenue,* 342 S.C. 34, 535 S.E.2d 642 (2000) (issue not argued in brief is deemed abandoned and precludes consideration on appeal).

■ In any event, when the accused neither testifies nor offers any witnesses, it is error for the solicitor to comment upon the defendant's failure to call witnesses on his

behalf. *State v. Posey*, 269 S.C. 500, 238 S.E.2d 176 (1977) (where defendant did not present evidence, it was error for solicitor to comment on defendant's failure to call his wife who was eyewitness to crime). This rule stems from the constitutional presumption of innocence and the State's burden of proving the accused guilty. *Id.*

> It is elementary that an accused is presumed innocent until proven guilty and that the burden is upon the State to prove the accused committed the crime charged. An accused has the right to rely entirely upon this presumption of innocence and the weakness in the State's case against him. He would clearly be deprived of that right if an adverse inference is permitted to be indulged against him because of its exercise.

*Id.* 269 S.C. at 503, 238 S.E.2d at 177; *see State v. Browning*, 154 S.C. 97, 102, 151 S.E. 233, 235 (1930) ("... the defendant did not take the stand to deny or explain the evidence adduced against him, and that he did not offer any evidence in his behalf.... The defendant had the constitutional right to adopt these courses if he chose to do so, and neither the lower court nor this court have the right to punish him for the exercise of either of those rights.").

Although we agree with the State that Primus "actively pursued" an alibi defense, Primus neither testified nor called witnesses on his own behalf. Primus' alibi defense was introduced by the assistant solicitor through direct-examination of a State's witness. Neither defense counsel's closing argument nor the trial judge's charge on alibi constitute evidence of alibi. Accordingly, the Court of Appeals correctly held the assistant solicitor's comment concerning Primus' failure to produce Uncle Joe Hodges was improper.

## B.

Did the Court of Appeals err by holding the trial judge's several jury charges did not cure the assistant solicitor's alibi comment?

Relying on *State v. Pickens*, 320 S.C. 528, 466 S.E.2d 364 (1996), the Court of Appeals held the trial judge's final jury instruction on Primus' right not to testify or put up evidence did not cure the assistant solicitor's comment during closing argument. The State argues the Court of Appeals erred by

failing to consider the judge's remarks to the jury throughout the trial, particularly the judge's remarks after the jury was sworn, after Primus rested his case, and after Primus objected to the assistant solicitor's comment. We disagree.

The trial judge's remarks after the jury was sworn and after Primus rested his case were not included in the Record on Appeal. Accordingly, the Court of Appeals could not have considered the remarks. Rule 210(h), SCACR ("Except as provided by Rule 212 and Rule 208(b)(1)(C) and (2), the appellate court will not consider any fact which does not appear in the Record on Appeal.").[5]

Moreover, in its brief to the Court of Appeals, the State did not assert the trial judge's response to Primus' objection constituted an effective curative instruction. Accordingly, the State failed to preserve this argument for consideration by the Court on certiorari. Rule 229(d)(2), SCACR (only questions raised in the Court of Appeals and in the petition for rehearing shall be included in the petition for certiorari).

## C.

Did the Court of Appeals err by concluding the assistant solicitor's alibi comment was not harmless error?

The State argues the Court of Appeals erred by holding the assistant solicitor's comment was not harmless error. We agree.

The victim testified she had known Primus for seven years and had been on one date with him years before. She explained that on the evening of July 12, 1997, Primus gave her a ride from St. George to a club in Bowman. Her boyfriend drove her home from the club around 2:00 a.m.

At 7:00 a.m. on July 13th, Primus arrived at the victim's home and asked if she would like to drive with him to visit her uncle. She agreed. Not long after, Primus stopped his car at an abandoned home and told her to get out of the car. According to the victim, when she refused, he came around the side of the car with a rusty, pointed object, pulled her out of the vehicle, and pushed her into the house. He made her

---

5. We find no error in the Court of Appeals' denial of the State's motion to supplement the record.

take her clothes off and lie on the bed; he placed his penis inside her for "a couple of seconds" before she kneed him. The victim then jumped through a glass window, cutting her finger. Primus followed her outside, wrestling her to the ground. The victim found a stick and jabbed Primus in the eye and chest. She was able to escape and run to a neighboring home.

Hubert Shieder testified that early on the morning of July 13, 1997, someone rang his doorbell. The victim was standing at the front door. She was naked, had scratches and blood around her mouth, and was shaking and nervous. She stated she had been raped.

Toni Shieder testified the victim rang her doorbell 7:30 a.m. But for a pair of socks and one shoe, the victim was naked. Mrs. Shieder described the victim as "afraid, scared, just petrified." Mrs. Shieder called the police. She testified the abandoned home is located one-quarter of a mile from her own home.

The patrol officer who first arrived at the Shieders' home testified the victim had a cut on her hand, blood around her mouth, and was in emotional distress. He located a wooden stick on the front porch steps. The victim identified Primus as her attacker.

Through the crime scene technician/fingerprint examiner the State admitted photographs of the abandoned home. The photographs show a broken glass window, a trail of blood leading in the direction of the Shieders' home, a purple t-shirt in the bedroom, and one tennis shoe in the bedroom.[6] The witness testified Primus' fingerprint was on the doorknob of the abandoned home.

The SLED serologist testified a laboratory analyzed three areas of blood located on the wooden stick found on the Shieders' front porch. Blood on one end and the middle of the stick was consistent with the victim's DNA profile. The victim could not have been the donor of blood located on the other end of the stick; Primus could have been the donor of this blood. According to the serologist, testing the population at

---

6. The victim testified the t-shirt and tennis shoe belonged to her.

random, 1 of 174 people would match the two-point DNA profile on the blood found on this end of the wooden stick.

Detective Bills testified Primus gave a statement to the police. According to Bills, Primus stated he drove the victim and others to a club in Bowman around 10:00 p.m. on July 12, 1997. Between 3:00 and 4:00 a.m., he left the club and went to Club Venezula in North Charleston. At 7:00, he had breakfast at Shoney's then went to his Uncle Joe Hodge's home where he stayed for two or three hours. Thereafter, he went to Carter's convenience store; he had car trouble and left his car by the side of the road. A stranger gave Primus a lift and dropped him off in Springtown where Primus played basketball with someone named "David." This was the first time he had played basketball with David and he did not know his last name. Primus stated he received scratches from playing basketball.

According to the detective, he arrested and interviewed Primus on July 15, two days after the assault. At that time, Primus had scratches on his face, neck, back and chest. The detective stated these injuries were consistent with the victim's report.

The detective testified he made numerous attempts to contact Joe Hodges, but Hodges did not respond. He also testified he spoke with Primus on another occasion and asked him some specifics about Club Venezula. At that time, Primus became upset and angry and stated he had not gone inside the club.

It is undisputed the victim was attacked and beaten. The question was the identity of the perpetrator. Relying solely on the "de minimus" DNA evidence, the Court of Appeals determined there was not overwhelming evidence that Primus was the assailant.

We conclude there was overwhelming evidence of Primus' guilt. His fingerprint was found on the doorknob of the abandoned home. Two days after the assault, he had scratches on his face and chest which were consistent with the victim's assertion she had scratched Primus on the face and chest with a stick. Finally, the victim's blood was positively identified as being on the wooden stick she used to fend off her attacker; DNA tests determined Primus could have left

the blood on the other end of the same wooden stick. According to the serologist, examining the population at random, only 1 of 174 people would match the DNA profile of the blood located on the stick. While this probability is not nearly as definitive as that which has been offered in other trials, it is nonetheless highly persuasive, especially when combined with other evidence of Primus' guilt. Accordingly, the assistant solicitor's comment, while improper, was harmless beyond a reasonable doubt. *State v. Huggins,* 325 S.C. 103, 481 S.E.2d 114 (1997), *citing Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974) (new trial will not be granted unless prosecutor's comments so infected trial with unfairness as to make the resulting conviction a denial of due process).

In conclusion, we **AFFIRM IN PART** and **REVERSE IN PART.**

TOAL, C.J., MOORE, J., and Acting Justice George T. GREGORY, Jr., concur.

PLEICONES, J., concurring in part and dissenting in part in a separate opinion.

Justice PLEICONES.

I concur in part and dissent in part. I would hold that assault and battery of a high and aggravated nature (ABHAN) is not a lesser-included offense of first degree criminal sexual conduct and would vacate Primus's ABHAN conviction. *See State v. Elliott,* 346 S.C. 603, 552 S.E.2d 727 (2001)(Pleicones, J., dissenting). I agree with the majority's conclusion that the assistant solicitor's improper statement in closing argument does not warrant a new trial.