589 S.E.2d 792

**The STATE, Respondent,**

v.

**Eddie FIELDS, Appellant.**

**No. 3697.**

Court of Appeals of South Carolina.

Submitted Oct. 6, 2003.

Decided Nov. 24, 2003.

518

Assistant Appellate Defender Eleanor Duffy Cleary, of S.C. Office of Appellate Defense, of Columbia, for appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, all of Columbia; and Solicitor Ralph E. Hoisington, of Charleston, for respondent.

HUFF, J.:

Appellant, Eddie Fields, was indicted by a Charleston County grand jury for criminal sexual conduct (CSC) in the first degree and kidnapping.[1] At the close of evidence defense counsel requested, but was denied, an instruction on assault and battery of a high and aggravated nature (ABHAN). Following a jury trial, Fields was convicted of CSC in the first degree and sentenced by the trial judge to thirty years in prison. Fields appeals, arguing the trial court erred in refusing to instruct the jury on ABHAN. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

The victim, a seventeen-year-old high school student, testified that around 5:30 p.m. on February 2, 1999, she walked to the library to return a book. On her way there, she ran into one of her friends, and agreed she would meet her friend at a local restaurant on her way back from the library. As she continued toward the library, she encountered Fields, who started a conversation with her as he walked alongside the victim. Fields asked the victim if she had a boyfriend, to which she replied that she did. The victim then ran into two other friends on the street, but because she felt safe at the time, she did not tell these friends there was anything wrong. As Fields and the victim walked on toward the library, Fields asked her if she wanted a "stud for the night." The victim replied that she did not, and that she had a boyfriend. Shortly after this conversation, they arrived at the library. The victim did not go inside, but instead returned her book in the library drop box, because she planned to go meet her friend at the restaurant.

---

1. Apparently, the jury could not reach a verdict on the kidnapping charge and it was later dismissed.

Upon leaving the library, Fields asked the victim if she would like to get a beer with him. The victim did not want to, but after Fields persisted for some time, she finally agreed. She stated she did not refuse the offer, because she was not good at confronting people or being mean to them. Fields indicated that the victim could "just have one beer with [him]," and then she would be able to leave. A short time later, as the two walked into an area unfamiliar to the victim, she told Fields she was not going with him because she had to go meet her friend. At this point, Fields grabbed the victim's arm and kept threatening he would "cut [her] up" with a knife if she attempted to leave. He also told her he knew everyone in the neighborhood. The victim did not believe she would be able to get away from Fields, so she continued on with him.

As the two got to a grocery store, the victim noticed a group of men on the corner at the store. Fields said he was going in the store for a minute, and then walked over to the men and spoke to them. By the way Fields was talking to them and the way the men were looking at her, she believed Fields was instructing the men to make sure she did not leave. Fields entered the store leaving the victim outside. After exiting the store, Fields led the victim to an abandoned house. Although the victim stated that she did not want to enter the house, Fields forcefully pulled her onto the porch and then threw her into a door and onto the floor of the house.

Once inside, Fields picked the victim up off the floor and grabbed her around the neck, putting her in a headlock. He threatened to "cut [her] up" if she was not quiet. He pulled the victim up some stairs, pushed her through one room and into another, pushed her down on the ground and began locking the doors so she could not escape. He forced the victim to remove her pants and underwear and then demanded that she perform oral sex on him, grabbing her hair and pulling her down. For a significant period of time Fields was unable to perform, but eventually had vaginal intercourse with the victim.[2] When the intercourse was over, Fields told the victim to wait five minutes and then she could leave.

---

2. Although the record on appeal does not provide the exact duration of the encounter, the victim testified that after she escaped and phoned for

As the victim waited to make sure Fields was gone, another man entered the house and tried to prevent her from leaving. She was able to evade this man and escape the house. The victim stopped at a nearby home and phoned her parents. The parents took their daughter to a hospital, where she was given a complete sexual assault examination. The attending physician testified that the victim was "very frightened, crying, and withdrawn" and noted that her behavior and appearance was consistent with someone who had been sexually assaulted.

The internal physical examination revealed injuries that were consistent with someone who had been sexually assaulted, and inconsistent with consensual intercourse. On external examination, the victim displayed significant blunt trauma to her chin, broken blood vessels around and a scratch on her neck, bruising and scratches on her breast, bruising and scrapes on her elbow, pressure bruising on her forearm, and swelling and bruising to her knees. A DNA test conducted on semen found on the victim's underwear matched that of Fields. Testimony revealed that the sample showed a "very rare DNA print," and that only one out of 66 quintillion African Americans would be expected to have the same DNA print.

After the State rested, Fields did not testify nor put forth any evidence. Thereafter, defense counsel requested that the jury be charged with assault and battery of a high and aggravated nature as a lesser-included offense of criminal sexual conduct in the first degree. After considering the evidence presented during trial, the court denied the request. The jury found Fields guilty of first degree CSC and the trial judge imposed a sentence of thirty years.

## LAW/ANALYSIS

On appeal, Fields argues the trial court erred in failing to charge the jury with ABHAN. Fields asserts the jury could

---

help, she noticed from a clock that it was after 9:00, and thought to herself that she had "been there for hours."

infer from the evidence produced at trial that he was guilty of ABHAN, but not CSC. We disagree.

Pursuant to S.C.Code Ann. § 16–3–652 (2003):

(1) A person is guilty of criminal sexual conduct in the first degree if the actor engages in sexual battery with the victim and if any one or more of the following circumstances are proven:

(a) The actor uses aggravated force to accomplish sexual battery.

(b) The victim submits to sexual battery by the actor under circumstances where the victim is also the victim of forcible confinement, kidnapping, robbery, extortion, burglary, housebreaking, or any other similar offense or act.

(c) The actor causes the victim, without the victim's consent, to become mentally incapacitated or physically helpless by administering, distributing, dispensing, delivering, or causing to be administered, distributed, dispensed, or delivered a controlled substance, a controlled substance analogue, or any intoxicating substance.

" 'Sexual battery' means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, except when such intrusion is accomplished for medically recognized treatment or diagnostic purposes." S.C.Code Ann. § 16–3–651(h) (2003).

ABHAN, on the other hand, "is an unlawful act of violent injury accompanied by circumstances of aggravation." *State v. Primus,* 349 S.C. 576, 580, 564 S.E.2d 103, 105 (2002). As an element of ABHAN, circumstances of aggravation include, inter alia, the intent to commit a felony, infliction of serious bodily injury, great disparity in the ages or physical conditions of the parties, a difference in gender, and taking indecent liberties or familiarities with a female. *Id.* at 580–81, 564 S.E.2d. at 105–06.

Our courts have consistently held that ABHAN is a lesser-included offense of criminal sexual conduct in the first degree. *Id.* at 581, 564 S.E.2d at 106. A trial judge is required to charge a jury on a lesser-included offense if there

is evidence from which it could be inferred a defendant committed a lesser rather than a greater offense. *State v. Mathis,* 287 S.C. 589, 594, 340 S.E.2d 538, 541 (1986). Conversely, a trial judge does not err by refusing to charge a lesser-included offense where there is no evidence tending to show that the defendant was guilty only of the lesser offense. *State v. Murphy,* 322 S.C. 321, 325, 471 S.E.2d 739, 741 (Ct.App.1996); *State v. Funchess,* 267 S.C. 427, 429, 229 S.E.2d 331, 332 (1976).

◼ After considering the testimony given at trial as a whole, the trial court ruled that an instruction on ABHAN was not warranted. We agree. The record is devoid of **any evidence** tending to show that Fields is guilty of only ABHAN. Although defense counsel suggested in opening remarks that the sex was consensual, no evidence was presented at trial to support this assertion. The victim's uncontradicted testimony was that Fields physically forced her into an abandoned house, threw her into a door, pulled her upstairs, pushed her into a room and down on the ground, and forced her to perform sexual acts with him. Furthermore, the attending physician testified that the victim's injuries were consistent with someone who had been sexually assaulted, but not with consensual intercourse. Considering this evidence and the total lack of evidence tending to show Fields guilty of only the lesser offense, we agree with the trial court that the ABHAN charge was not warranted.

Fields also argues that, even though he did not testify or present any evidence on his own behalf, the jury could have disbelieved a portion of the State's evidence and determined the sex was consensual, and thereby found him guilty of the lesser offense of ABHAN. In *Funchess,* after considering a very similar argument, our supreme court held that "the [p]resence of evidence to sustain the crime of a lesser degree determines whether it should be submitted to the jury and the 'mere contention that the jury might accept the State's evidence in part and might reject it in part will not suffice.'" 267 S.C. at 430, 229 S.E.2d at 332 (quoting *State v. Hicks,* 241 N.C. 156, 84 S.E.2d 545). Accordingly, Field's mere assertion that the jury might have disbelieved the State's evidence that the sex was not consensual and on the remaining evidence found him guilty of ABHAN does not entitle him to have the

lesser offense submitted to the jury. *See also State v. Tyndall,* 336 S.C. 8, 22, 518 S.E.2d 278, 285 (Ct.App.1999) (possibility that the jury might have disbelieved the State's evidence as to the circumstances of aggravation and on the remaining evidence found the defendant guilty of simple assault and battery did not entitle the defendant to have the lesser offense submitted to the jury where there was no evidence tending to show defendant was guilty only of simple assault and battery); *State v. Rucker,* 319 S.C. 95, 98–99, 459 S.E.2d 858, 860 (Ct.App.1995) (contention that the jury might have disbelieved the State's evidence as to the circumstances of aggravation and on the remaining evidence found appellant guilty of the lesser offense of simple assault and battery did not entitle her to have the lesser offense submitted to the jury where appellant presented no evidence she committed some act that could be viewed by the jury as a simple assault); *State v. Hartley,* 307 S.C. 239, 241–42, 414 S.E.2d 182, 184 (Ct.App.1992) (where there was no evidence that showed defendant killed victim without malice, trial judge did not err in refusing to charge the jury on the crime of manslaughter as a lesser-included offense of the crime of murder); *State v. Foxworth,* 269 S.C. 496, 499, 238 S.E.2d 172, 173 (1977) (possibility that the jury might have disbelieved the State's evidence as to the circumstances of aggravation in ABHAN trial and on the remaining evidence found appellant guilty of the lesser offense of simple assault and battery did not entitle him to have the lesser offense submitted to the jury where all the evidence admitted at trial pointed to the appellant's guilt of assault and battery of a high and aggravated nature).

Because the record is devoid of evidence that Fields was guilty only of the lesser-included offense, we hold that the trial court did not err by refusing to charge the jury with ABHAN. Accordingly, the trial court's decision is

**AFFIRMED.**

GOOLSBY and BEATTY, JJ., concur.