605 S.E.2d 540

The STATE, Petitioner/Respondent,

v.

Nickie WHITE, Respondent/Petitioner.

No. 25896.

Supreme Court of South Carolina.

Heard Oct. 7, 2004.

Decided Nov. 15, 2004.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, Assistant Attorney General W. Rutledge Martin; and Solicitor Warren B. Giese, all of Columbia, for Petitioner–Respondent.

Katherine Carruth Link, of West Columbia; and South Carolina Office of Appellate Defense, both of Columbia, for Respondent–Petitioner.

Justice BURNETT:

This matter is before the Court on both parties' petitions for a writ of certiorari seeking review of the Court of Appeals' decision in *State v. White*, 353 S.C. 566, 578 S.E.2d 728 (Ct.App.2003). We affirm as modified.

### FACTUAL BACKGROUND

Following a jury trial, Respondent/Petitioner Nickie White (White) was convicted of first-degree criminal sexual conduct

(CSC) and kidnapping. White was sentenced to consecutive prison terms of thirty years for the criminal sexual conduct and ten years for kidnapping. The Court of Appeals affirmed White's kidnapping conviction, but reversed White's first-degree CSC conviction, holding the circuit court erred in refusing to charge assault and battery of a high and aggravated nature (ABHAN) as a lesser-included offense of CSC. The Court of Appeals also concluded the trial court did not err in refusing to charge simple assault as a lesser included offense of CSC and that any error in admitting the testimony of the State's expert on post-traumatic stress disorder and sexual abuse was harmless. *Id.* at 575–76, 578 S.E.2d at 733.

The events giving rise to White's conviction occurred in the early morning hours of August 1, 1998, after White and the victim left a club in Columbia where the victim was employed. On several previous occasions, the victim and White conversed while the victim worked. On the night of July 31, 1998, White was again a customer in the club. White and the victim talked and danced. When the victim needed to go for change during her shift, she asked White to accompany her. While the two were out, they took photographs together, kissed, and held hands.

White and the victim returned to the club and the victim accepted White's invitation to breakfast. Soon thereafter, the victim testified she became tired and frustrated because she had not made much money that night. She therefore declined White's breakfast invitation. Despite her fatigue and frustration, the victim agreed to drive White to his grandmother's house where he resided because he had no ride home. When they arrived, White went inside to check on his grandmother and then returned to the car where the victim was waiting. At this point, White and the victim offered very different accounts of the events that followed.

The victim testified White asked her to take him to the store to buy a soda. The victim further testified that White pulled a knife on her, held it to her throat, and threatened to kill her if she did not do as he said. White then directed the victim to Earlewood Park where he ordered her to park the car. When the victim attempted to escape, White ran her

down and dragged her into the woods. White punched the victim, raped her, and took one of her rings. White began choking the victim, and a struggle ensued for the knife. The victim testified she retrieved the knife and began swinging it back and forth in White's direction, injuring White. White then grabbed the victim and began choking her again. The victim threw the knife into the woods and grabbed White's genitals. The two continued to struggle and White suddenly walked off. Shortly after the attack, the victim encountered two men in the park who took her to the hospital.

White's account differed. According to White, after going to the store for a soda, the victim asked him to go to Earlewood Park to watch the sunrise. White testified he brought along a butcher knife to protect the two because the area has a history of drug-related violence. Once White and the victim arrived at the park, White stated the victim began "coming on" to him. The victim began kissing him and the two engaged in what White contended was consensual sex. White testified he ended the sexual encounter because he began thinking of his girlfriend. According to White, the victim became so angry that she grabbed White's knife and stabbed him. In self-defense, he hit her in the eye.

White testified he initially lied to law enforcement officers when he said he had been robbed by five males dressed in camouflage because he was scared and in shock.

## ISSUES

I.    Did the Court of Appeals err in concluding White was entitled to an ABHAN charge?

II.   Did the Court of Appeals err in affirming the trial court's refusal to charge the jury on simple assault and battery as a lesser-included offense of first-degree CSC?

III.  Did the Court of Appeals err in affirming the trial court's admission of expert testimony on post-traumatic stress disorder and sexual abuse?

### I.

The State argues the Court of Appeals erred in holding White was entitled to a charge on ABHAN as a lesser included offense of first-degree CSC. We disagree.

■ ABHAN is a lesser included offense of first degree CSC. *State v. Primus,* 349 S.C. 576, 581, 564 S.E.2d 103, 106 (2002). The law to be charged is determined by the evidence presented at trial. *State v. Todd,* 290 S.C. 212, 349 S.E.2d 339 (1986). A trial judge must charge a lesser included offense if there is any evidence from which the jury could infer the defendant committed the lesser rather than the greater offense. *Brightman v. State,* 336 S.C. 348, 350–351, 520 S.E.2d 614, 615 (1999). Conversely, a trial judge does not err by refusing to charge a lesser included offense where there is no evidence tending to show the defendant was guilty only of the lesser offense. *State v. Funchess,* 267 S.C. 427, 429, 229 S.E.2d 331, 332 (1976).

■ The Court of Appeals did not err in concluding the trial judge should have charged the jury on ABHAN and reversing White's CSC conviction. *State v. Hill,* 315 S.C. 260, 262, 433 S.E.2d 848, 849 (1993) (a trial court commits reversible error if it fails to give a requested charge on an issue raised by the evidence). Both the victim's and White's testimony support a charge of ABHAN. ABHAN is "an unlawful act of violent injury accompanied by circumstances of aggravation." *Primus,* 349 S.C. at 580, 564 S.E.2d at 105. " 'Circumstances of aggravation' is an element of ABHAN." *Id.* "Circumstances of aggravation include the use of a deadly weapon, the intent to commit a felony, infliction of serious bodily injury, great disparity in the ages or physical conditions of the parties, a difference in gender, the purposeful infliction of shame and disgrace, taking indecent liberties or familiarities with a female, and resistance to lawful authority." *Id.* at 580–81, 564 S.E.2d at 105–106.

The victim's testimony that prior to the commission of the CSC, White dragged her into the woods while threatening her with the knife and punched her in the eye supports a charge of ABHAN because it was contemporaneous with the CSC. White's testimony that he and the victim engaged in consensual sex, the victim stabbed him, and he hit the victim in the eye, is evidence from which the jury could infer White committed ABHAN rather than CSC. *Cf. State v. Fields,* 356 S.C. 517, 589 S.E.2d 792 (Ct.App.2003) (concluding the defendant, in prosecution for CSC, was not entitled to jury instruction on ABHAN where the defendant did not testify and there was no

evidence presented at trial to support the defense's assertion that the sex was consensual). In other words, there was evidence from which the jury could have concluded the sex was consensual and that the battery occurred after the sexual encounter. Therefore, the Court of Appeals did not err in holding White was entitled to an ABHAN charge and reversing White's first degree CSC charge.

## II.

White argues the Court of Appeals erred in affirming the trial court's refusal to charge simple assault and battery as a lesser included offense of first-degree criminal sexual conduct. We disagree, although we modify the Court of Appeals' analysis.

The Court of Appeals concluded this case is outside the realm of simple assault and battery because the parties are of opposite sexes. An example of a circumstance of aggravation includes difference in gender. *Primus*, 349 S.C. at 580, 564 S.E.2d at 105. Simple assault and battery is an unlawful act of violent injury to another, *unaccompanied by any circumstances of aggravation*. *State v. Tyndall*, 336 S.C. 8, 21, 518 S.E.2d 278, 285 (Ct.App.1999) (emphasis added). Therefore, the Court of Appeals determined that a simple assault and battery charge was not proper because a circumstance of aggravation existed in this factual scenario.

The Court of Appeals' holding appears to establish a bright line rule that in all cases of assault and battery involving persons of different genders, any assault must be one of a high and aggravated nature. A difference in gender, like any other aggravating circumstance, is a factor for the court to consider in determining if the evidence warrants a jury charge on simple assault. A simple assault and battery may occur between a man and a woman, depending on the degree of violence and the circumstances attending the attack.[1] *See e.g.*, *State v. Young*, 243 S.C. 187, 133 S.E.2d 210

---

1. *See State v. Shea*, 226 S.C. 501, 505–07, 85 S.E.2d 858, 859–60 (1955) (trial court erred in not charging jury on simple assault and battery where man was indicted for assault with intent to ravish and assault and battery of high and aggravated nature against female); *State v. Grace*, 350 S.C. 19, 564 S.E.2d 331 (Ct.App.2002), *cert. denied*, Nov. 21,

(1963) (concluding that resistance to lawful arrest, an aggravating factor, may warrant a charge on simple assault and battery depending on the facts of the case). Every assault and battery, however slight, upon a member of the opposite sex does not become assault and battery of a high and aggravated nature because of the very fact the attack was upon one of the opposite sex. A difference in gender is a factor to be considered, together with the other circumstances of the attack, in determining the gravity of the assault and battery upon the person.

Although, a difference in gender alone is not dispositive on whether the jury should be charged with simple assault and battery, we believe under the facts of this case, the trial judge properly denied White's request for a simple assault and battery charge.

### III.

White contends the Court of Appeals erred in concluding the trial court properly allowed Cole Badger, a psychotherapist who counseled the victim and qualified as an expert in post-traumatic stress disorder and assessment and treatment of sexual abuse, to testify. We disagree.

First, White argues Badger's testimony in this case was outside the scope of the exception for rape trauma evidence carved out by *State v. Schumpert*, 312 S.C. 502, 435 S.E.2d 859 (1993). In *Schumpert*, we held that both expert testimony and behavioral evidence are admissible as rape trauma evidence to prove a sexual offense occurred where the probative value of such evidence outweighs its prejudicial effect. *Id.* at 506, 435 S.E.2d at 862. White argues that *Schumpert* only applies in cases in which there is a child victim. Because the victim in the present case was an adult when the incident occurred, *Schumpert* is inapplicable. We disagree.

Expert testimony on rape trauma may be more crucial in situations where children are victims. The inexperience and impressionability of children often render them unable to

---

2002 (male defendant convicted of three counts of simple assault and battery under indictments for criminal sexual assault with his niece); *State v. LaCoste,* 347 S.C. 153, 553 S.E.2d 464 (Ct.App.2001).

effectively articulate the events giving rise to criminal sexual behavior. Nevertheless, the importance of rape trauma testimony in the case of a child victim does not negate the relevance of rape trauma evidence where the victim is an adult. The purpose of rape trauma evidence is to prove the elements of criminal sexual conduct since such evidence may make it more or less probable the offense occurred. *State v. Alexander*, 303 S.C. 377, 401 S.E.2d 146 (1991). This is true whether the victim is an adult or child. *See State v. Marks*, 231 Kan. 645, 647 P.2d 1292 (1982) (concluding in prosecution for rape in which defendant raised defense of consent, psychiatrist's testimony that twenty-one year old victim had been suffering from rape trauma was relevant).

Second, White argues the prejudicial effect of the expert testimony outweighed its probative value. Specifically, White argues Badger should not have been allowed to testify the victim's symptoms were consistent with those of a recent trauma sufferer. We disagree. Badger's testimony is consistent with the probative purpose of admitting rape trauma evidence, i.e., to refute the defendant's contention that the sex was consensual and to prove that a sexual offense occurred.

Furthermore, we agree with the Court of Appeals that Badger's testimony was cumulative. Even assuming the trial judge erred in admitting the testimony, reversal is not warranted when evidence erroneously admitted is merely cumulative. *See* Rule 403, SCRE. At trial Badger testified that the victim's symptoms were consistent with someone who had suffered trauma and had been raped.[2] A nurse who examined the victim testified that the victim was "upset and appeared frightened, disheveled; she was crying, visible shaken." Additionally, the nurse testified the victim's physical and mental state was consistent with what the nurse was told happened to the victim. Dr. Jenkins testified that the victim was "quite tearful; she was very agitated" and that the victim had suffered trauma.

Finally, White argues that Badger improperly testified she believed the victim. We conclude White opened the door to this testimony by cross-examining Badger as to whether she

---

2. For example, Badger testified that the victim had nightmares, could not concentrate, and was distrustful of others.

had cases in which she did not believe the alleged victim. *State v. Foster*, 354 S.C. 614, 582 S.E.2d 426 (2003) (one who opens the door to evidence cannot complain of its admission).

For the foregoing reasons, we affirm as modified the Court of Appeals' decision.

**AFFIRMED AS MODIFIED.**

TOAL, C.J., MOORE, WALLER and PLEICONES, JJ., concur.