719 S.E.2d 688

The STATE, Respondent,

v.

Willie Albert GILMORE, Appellant.

No. 4903.

Court of Appeals of South Carolina.

Heard May 3, 2011.

Decided Nov. 2, 2011.

Appellate Defender Breen Stevens, of Columbia, for Appellant.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General William M. Blitch, Jr., and Solicitor W. Barney Giese, all of Columbia, for Respondent.

FEW, C.J.

Willie Albert Gilmore appeals his conviction for first-degree criminal sexual conduct (CSC). The central issue in the appeal is whether the trial court erred in declining to charge the jury on assault and battery of a high and aggravated nature (ABHAN) as a lesser-included offense. We hold the facts do not support an ABHAN charge. We also hold the trial court acted within its discretion in allowing the victim to testify regarding two statements Gilmore allegedly made during the sexual assault. We find two other issues raised by Gilmore to be unpreserved for appellate review. We affirm.

## I. Facts and Procedural History

Gilmore and the victim knew each other for approximately ten years, dated each other for about six months, and lived together in Gilmore's house until three weeks before the crime. The victim testified that on the day of the crime she visited the house to check on furniture she left behind. Gilmore was not home when she arrived, so she talked with another woman for a short while until Gilmore returned. After the other woman left, Gilmore and the victim talked while Gilmore gave her a foot rub. The victim gave Gilmore money to go to the liquor store. Gilmore returned with a pint

of gin, which they drank together. After they finished drinking the gin, Gilmore went to the back of the house to speak with a man who had stopped by, and the victim stayed in another room talking to a woman who was with the man. The victim testified that after the man and woman left, Gilmore came running at her in a rage and slapped her two or three times in the face. She later explained that Gilmore was angry because he thought she had said something to the woman about another man. She testified she attempted to leave after being slapped, but Gilmore would not allow it.

The victim then testified to the events of the sexual assault. Gilmore told the victim he wanted to have sex and pulled a knife. He forced her to remove her clothes and to pull a mattress into another room. He then raped her on the mattress. She testified that during the sexual assault he told her: "If I was like I was, Bitch, I would have killed you. You would be a dead Bitch," and "I've killed one, and I'll kill again."

At the conclusion of the presentation of evidence, Gilmore requested a charge for ABHAN as a lesser-included offense of CSC. The trial judge denied the request. The jury found Gilmore guilty of first-degree CSC, and the trial judge sentenced him to life in prison.

## II. ABHAN as a Lesser–Included Offense

Gilmore contends on appeal there is evidence in the record from which the jury could have concluded he committed ABHAN and not CSC. We disagree. CSC in the first degree is defined by statute as follows: "the actor engages in sexual battery with the victim and ... (a) [t]he actor uses aggravated force to accomplish sexual battery." S.C.Code Ann. § 16–3–652(1)(a) (Supp.2010). ABHAN is a lesser-included offense of first degree CSC. *State v. Primus,* 349 S.C. 576, 581, 564 S.E.2d 103, 106 (2002), *overruled on other grounds by State v. Gentry,* 363 S.C. 93, 106, 610 S.E.2d 494, 501 (2005). If there is evidence in the record from which the jury could infer the defendant is guilty of the lesser-included offense, rather than the crime charged, the trial judge must instruct the jury on the lesser-included offense. *Dempsey v. State,* 363 S.C. 365, 371, 610 S.E.2d 812, 815 (2005) ("[A] judge

is required to charge a jury on a lesser-included offense 'if there is any evidence from which it could be inferred the lesser, *rather than the greater*, offense was committed.' " (quoting *State v. Gourdine*, 322 S.C. 396, 398, 472 S.E.2d 241, 242 (1996))).

■■■ In criminal cases, we review the decisions of the trial court only for errors of law. *State v. Gibson*, 390 S.C. 347, 353, 701 S.E.2d 766, 769 (Ct.App.2010). Therefore, in the context of a trial court's decision not to charge a requested lesser-included offense, we review the trial court's decision de novo. We must reverse and remand for a new trial if the evidence in the record is such that the jury could have found the defendant guilty of the lesser offense instead of the crime charged.

■■■ There is evidence in the record Gilmore committed ABHAN.[1] For example, the victim testified Gilmore slapped her "pretty hard" in the face two or three times, and a nurse testified the victim had swelling on the side of her face. The victim also testified Gilmore grabbed her after the rape and after he washed up, and thus prevented her from leaving the house. See *State v. Whitten*, 375 S.C. 43, 46, 649 S.E.2d 505, 507 (Ct.App.2007) (stating " 'ABHAN is the unlawful act of violent injury to another accompanied by circumstances of aggravation,' " including " 'the intent to commit a felony, infliction of serious bodily injury, . . . [and] a difference in gender' " (quoting *State v. Fennell*, 340 S.C. 266, 274, 531 S.E.2d 512, 516–17 (2000))). The mere existence of evidence of ABHAN, however, is not sufficient to require the jury charge. Rather, there must be evidence the defendant committed ABHAN *instead of* CSC. *Dempsey*, 363 S.C. at 371, 610 S.E.2d at 815.

Our courts have identified three types of cases in which the evidence can support an inference that the defendant is guilty of ABHAN instead of CSC: (1) there is evidence the defendant committed ABHAN by an unlawful sexual touching in the course of attempting CSC, and there is conflicting evidence as to whether the defendant accomplished sexual battery; *see, e.g., State v. Pressley*, 292 S.C. 9, 9–10, 354 S.E.2d 777, 777

1. The State essentially conceded this at trial, stating "the slap is a totally separate—it's a separate charge. I guess we could have charged him with either . . . CDV or an ABHAN or hitting her."

(1987); *State v. Mathis,* 287 S.C. 589, 594, 340 S.E.2d 538, 541 (1986); (2) there is evidence the defendant committed a non-sexual ABHAN, such as in a fight, and in addition to evidence to support CSC, there is evidence the two never had sex; *see, e.g., State v. Lambright,* 279 S.C. 535, 537, 309 S.E.2d 7, 8 (1983); and (3) there is evidence the defendant committed a nonsexual ABHAN contemporaneous with CSC, but there is evidence that instead of CSC the two had consensual sex; *see, e.g., State v. White,* 361 S.C. 407, 412, 605 S.E.2d 540, 542–43 (2004).

██ In this third type of case, which this case involves, the evidence must support the existence of two conditions before the trial judge is required to charge the jury on the lesser-included offense of ABHAN. First, the nonsexual ABHAN must have occurred "contemporaneously" with the alleged CSC. *Compare White,* 361 S.C. at 412–13, 605 S.E.2d at 542–43 (ABHAN charge required because ABHAN occurred "contemporaneously" with alleged CSC) *with Dempsey,* 363 S.C. at 371, 610 S.E.2d at 815 (evidence of ABHAN on occasions not contemporaneous with alleged CSC did not warrant ABHAN charge). Second, there must be evidence that the victim consented to have sex. This requirement is illustrated in our opinion in *State v. White,* 353 S.C. 566, 572, 578 S.E.2d 728, 731 (Ct.App.2003), and in the supreme court's opinion affirming. 361 S.C. at 413, 605 S.E.2d at 543. In *White,* it was not possible for the defendant to be guilty of ABHAN *instead of* CSC unless there was evidence of consensual sex. 361 S.C. at 412, 605 S.E.2d at 543.[2] Without evidence of consent, the ABHAN would have been in addition to CSC. *See id.*

The rationale for both of the required conditions is that if either condition does not exist, the evidence will not support the inference the ABHAN occurred *instead of* the CSC. Rather, if either condition does not exist, the ABHAN neces-

---

2. To illustrate this requirement, the supreme court compared the facts of *White* to the facts this court addressed in *State v. Fields,* 356 S.C. 517, 589 S.E.2d 792 (Ct.App.2003), in which we upheld the trial judge's decision not to charge ABHAN where there was "no evidence" of consensual sex. *White,* 361 S.C. at 412–13, 605 S.E.2d at 543; *see Fields,* 356 S.C. at 523, 589 S.E.2d at 795 ("Although defense counsel suggested in opening remarks that the sex was consensual, no evidence was presented at trial to support this assertion.").

sarily occurred *in addition to* the CSC. In this case, the evidence supports the existence of the first condition: the ABHAN was contemporaneous. Gilmore slapped the victim within minutes before, and "grabbed" her within minutes after, the alleged CSC.[3] The second question is much more difficult. However, we find insufficient evidence to support a finding of consensual sex.

In all of the cases in which our appellate courts have found evidence of consensual sex, the defendant testified directly that the sex was consensual. *See, e.g., White*, 361 S.C. at 412, 605 S.E.2d at 543 ("White's testimony that he and the victim engaged in consensual sex, the victim stabbed him, and he hit the victim in the eye, is evidence from which the jury could infer White committed ABHAN rather than CSC."). Here, however, Gilmore did not testify. The only other eyewitness to the alleged CSC was the victim, who testified the sex was not consensual. Therefore there is no direct evidence that the victim consented to have sex.[4]

Because there is no direct evidence that the victim consented to sex, we must determine whether circumstantial evidence of consensual sex required the charge on ABHAN. In making this determination, we are mindful that our conclusion must be based on the existence of evidence, and not simply on the possibility that the jury might not have believed the evidence offered by the State. *See State v. Patterson*, 337 S.C. 215, 232, 522 S.E.2d 845, 854 (Ct.App.1999) (On appeal from the denial of a directed verdict motion, the court stated "[i]t is irrelevant that the jury might have disbelieved any portion of the evidence because that involves the weight of the evidence."); *State v. Franks*, 376 S.C. 621, 624, 658 S.E.2d 104, 106 (Ct.App.2008) (" 'The mere contention that the jury might

---

3. The facts of *White* demonstrate that "contemporaneous" includes at least events that occur within minutes of the alleged CSC. 361 S.C. at 412–13, 605 S.E.2d at 542–43.

4. We recognize the victim testified she was raped, and thus there is direct evidence that there was no consensual sex. However, a jury charge on ABHAN in this type of CSC case is not required unless there is evidence that consensual sex did occur. In reviewing a circuit court's ruling on whether to charge ABHAN under these circumstances, we do not consider the strength, or even the existence, of evidence to the contrary.

accept the State's evidence in part and reject it in part is insufficient to satisfy the requirement that some evidence tend to show the defendant was guilty of only the lesser offense.' " (quoting *State v. Geiger,* 370 S.C. 600, 608, 635 S.E.2d 669, 674 (Ct.App.2006))).

 In a case such as *White,* where there is direct evidence of consent, the trial court, and this court on review, must use the any evidence standard to determine whether the requested charge should be given. 361 S.C. at 412, 605 S.E.2d at 542. On the other hand, in a purely circumstantial evidence case such as this one,[5] the existence of "any" circumstantial evidence would not necessitate the charge on ABHAN. The situation is analogous to determining when purely circumstantial evidence requires the denial of a directed verdict. Our courts have held that the trial court must deny the directed verdict motion and submit the case to the jury " '[i]f there is any direct evidence *or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused.'* " *State v. Brandt,* 393 S.C. 526, 542, 713 S.E.2d 591, 599 (2011) (emphasis added) (quoting *State v. Weston,* 367 S.C. 279, 292–93, 625 S.E.2d 641, 648 (2006)). We find we should use the same standard for circumstantial evidence in evaluating the sufficiency of the evidence on a lesser-included offense. *See Geiger,* 370 S.C. at 607, 635 S.E.2d at 673 ("To justify charging the lesser crime, the evidence presented must allow a rational inference the defendant was guilty only of the lesser offense.... The court looks to the totality of evidence in evaluating whether such an inference has been created." (citing *State v. Tyndall,* 336 S.C. 8, 21–22, 518 S.E.2d 278, 285 (Ct.App.1999) ("Due process requires that a lesser included offense be charged when the evidence warrants it but only if the evidence would permit a jury rationally to find the defendant guilty of the lesser offense."))). When the evidence supporting a request for a charge on a lesser-included offense is purely circumstantial, we examine the record to determine if there is sufficient circumstantial evidence to permit a reason-

---

5. By "purely circumstantial evidence case," we mean the evidence that the victim consented to sex is purely circumstantial. As stated in footnote 4, there is direct evidence the victim did not consent to sex. There is also direct evidence that Gilmore used aggravated force to accomplish sexual battery, and thus that he is guilty of CSC.

able inference that the defendant is guilty only of the lesser crime.

We note initially that Gilmore's counsel conceded the two had sex. However, the theme of counsel's opening statement, cross-examination, and closing argument was to highlight evidence the sex was consensual. On appeal, Gilmore argues the following evidence supported that theme and permitted a reasonable inference the victim consented to have sex. First, the events occurred in the context of the victim going to Gilmore's house purportedly to check on her furniture, but staying for hours alone with him. The victim testified she knew Gilmore wanted to get back together with her, and they talked about it that afternoon. The victim denied any such interest, but defense counsel elicited testimony on cross-examination which indicated she was thinking about getting back together with Gilmore as well.[6] After being at Gilmore's house for some time, the victim gave Gilmore money to buy a bottle of gin, which they drank together. At some point during all of this, Gilmore gave the victim a foot massage. Finally, a nurse testified the medical examination of the victim's genital area by the doctor and the nurse indicated no evidence of sexual trauma.[7]

---

6. Several witnesses testified the victim was jealous of the other women who stopped by that day. The victim admitted she asked Gilmore if either of them were his new girlfriend.

7. We are aware of this court's statement in *Geiger:* "It is inconsequential that there was no forensic evidence of sexual assault." 370 S.C. at 611, 635 S.E.2d at 675. However, we do not believe this statement forecloses our consideration of this circumstance. We distinguish *Geiger* on this point for three reasons. First, the defendant was not charged with CSC, but rather with assault with intent to commit CSC. Second, we also found in *Geiger* that the victim's "injuries were consistent with the victim's narrative of the events." *Id.* Third, the issue in *Geiger* was not whether there was consent, but whether there was evidence the defendant did not attempt a CSC. We also acknowledge the State's position that the results of the forensic examination should be characterized as "no evidence," and should not be considered the existence of evidence. We disagree. The nurse and a doctor performed a medical examination and the nurse testified to the results of the examination. Her testimony that neither she nor the doctor found any injuries resulting from sexual trauma is the existence of one circumstance relating to the question of whether the sex was consensual. However, even when considered along with the other circumstan-

■ Issues involving circumstantial evidence present unique challenges, "requir[ing] careful reasoning by the trier of facts." *State v. Grippon,* 327 S.C. 79, 87, 489 S.E.2d 462, 466 (1997) (Toal, J., concurring) (quoting *People v. Ford,* 66 N.Y.2d 428, 497 N.Y.S.2d 637, 488 N.E.2d 458, 465 (1985)). "[A]nalysis of circumstantial evidence is a more intellectual process, requiring jurors to engage in lawyer-like scrutiny and forcing them to see both sides." 327 S.C. at 87–88, 489 S.E.2d at 466 (Toal, J., concurring) (quoting Irene Rosenberg and Yale Rosenberg, *"Perhaps What Ye Say Is Based Only On Conjecture"—Circumstantial Evidence, Then and Now,* 31 Hous. L.Rev. 1371, 1412 (1995)). Similarly, we may not base our decision on appeal on the strength of the evidence that Gilmore committed CSC. Rather, we must consider both sides. We must examine the record to determine whether sufficient circumstantial evidence exists to support a reasonable inference that Gilmore and the victim had consensual sex, and thus that Gilmore is guilty of ABHAN instead of CSC. Viewing all of the evidence in the light most favorable to Gilmore,[8] we find there is not sufficient evidence of consensual sex to permit the jury to reasonably conclude that Gilmore was guilty only of ABHAN. The trial judge correctly refused to give the ABHAN charge.

### III. Admissibility of Gilmore's Statements

■ The victim testified that Gilmore made two statements to her as he was preparing to rape her: "If I was like I was, Bitch, I would have killed you. You would be a dead Bitch," and "I've killed one, and I'll kill again." Gilmore objected to the statements under Rule 404(b), SCRE. We find the trial judge acted within her discretion to admit the statements.

The State argues that the statements were offered to prove what happened in this case, not to prove some other crime,

---

tial evidence in this case, this circumstance is not sufficient to permit a reasonable inference the sex was consensual.

**8.** *See State v. Hernandez,* 386 S.C. 655, 660, 690 S.E.2d 582, 585 (Ct.App.2010) ("In determining whether the evidence requires a [lesser-included] charge ..., the ... court views the facts in a light most favorable to the defendant.").

wrong, or act. Rule 404(b), SCRE. Thus, the State argues, the statements were admissible as part of the *res gestae*.[9] Our courts have recognized that the State may prove the actions of the defendant when those actions are part of the crime, not separate. *See State v. Owens*, 346 S.C. 637, 652, 552 S.E.2d 745, 753 (2001) (stating "the *res gestae* theory recognizes evidence of other bad acts may be an integral part of the crime with which the defendant is charged or may be needed to aid the fact finder in understanding the context in which the crime occurred"), *overruled on other grounds by Gentry*, 363 S.C. at 106, 610 S.E.2d at 501. Here, the State offered the statements to prove how Gilmore subdued the victim in order to commit the rape. The trial judge acted within her discretion to admit the statements as part of the crime.

Gilmore argues, however, that even though the statements may be part of the crime, evidence of the previous killing described in one of the statements is evidence of an "other crime," and therefore inadmissible under Rule 404(b). We disagree. The focus of a court's inquiry in determining admissibility of evidence of other crimes, wrongs, or acts under Rule 404(b) is the purpose for which the evidence is offered. *See* Rule 404(b), SCRE ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."). If the evi-

---

9. Before the adoption of the South Carolina Rules of Evidence in 1995, the latin term *"res gestae"* meant two things. First, the term described an exception to the rule against hearsay, essentially a combination of the present sense impression and excited utterance exceptions now found in Rules 803(1) and (2). See Rule 803, SCRE, Note (citing *State v. Harrison*, 298 S.C. 333, 380 S.E.2d 818 (1989)). The term is no longer used to describe a hearsay exception. Second, *res gestae* meant the evidence was part of the body of the crime. *See Black's Law Dictionary* 1173 (5th ed. 1979) (" *'Res gestae'* means literally things or things happened. . . ."). Under the Rules of Evidence, which do not use the term, arguing an event is part of the *res gestae* is equivalent to arguing the evidence is not an "other" act under Rule 404(b), but rather is integral to the crime or event. Our courts have continued to use the term to describe details of a crime or event which are not to be excluded as "other crimes, wrongs, or acts" under Rule 404(b). *See State v. Wiles*, 383 S.C. 151, 158–59, 679 S.E.2d 172, 176 (2009) (stating "evidence of other crimes which supplies the context of the crime, or is intimately connected with and explanatory of the crime charged, is admissible as *res gestae* evidence") (citing *State v. Adams*, 322 S.C. 114, 122, 470 S.E.2d 366, 370–71 (1996)).

dence is offered for the prohibited purpose of "prov[ing] the character of a person in order to show action in conformity therewith," Rule 404(b) excludes it. However, if the evidence is offered for one of the other purposes listed in the second sentence of Rule 404(b), the rule does not exclude it. Rule 404(b), SCRE ("It may, however, be admissible to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent."). We believe the trial judge acted within her discretion to conclude the statements were not offered for the prohibited purpose of proving Gilmore's character "in order to show action in conformity therewith," but rather were offered to prove intent. *See State v. Fletcher*, 379 S.C. 17, 23, 664 S.E.2d 480, 483 (2008) ("To be admissible, the bad act must logically relate to the crime with which the defendant has been charged."). The trial judge properly concluded the statements were admissible.

## IV. Other Issues

Gilmore raises two other issues on appeal. We find that neither of the issues are preserved, and decline to address them. As to whether the judge erred in excluding evidence of Gilmore's prior conviction: *State v. Elmore*, 368 S.C. 230, 238, 628 S.E.2d 271, 275 (Ct.App.2006) (adhering to the rule that when a defendant does not testify he fails to preserve pretrial rulings on impeachment); *see also State v. Glenn*, 285 S.C. 384, 385, 330 S.E.2d 285, 286 (1985). As to whether the judge erred in allowing witness testimony: *State v. Bryant*, 372 S.C. 305, 315–16, 642 S.E.2d 582, 588 (2007) (holding an issue conceded in the trial court cannot be argued on appeal); *State v. Whipple*, 324 S.C. 43, 50–51, 476 S.E.2d 683, 687 (1996) (finding a defendant was found to have waived his right to complain of inadequate time to review discovery after the trial court granted an approximately thirty-hour delay when the defendant sought no further time, expressly conceded he was ready to proceed with trial, and proceeded without further objection).

## V. Conclusion

For the reasons stated above, Gilmore's conviction is **AFFIRMED**.

PIEPER and LOCKEMY, JJ., concur.